Mr. Miller. Good morning, Your Honor. May it please the Court, Scott Miller for Cindy Monroe. This case is different from the cases cited by the Commissioner in its brief. In those cases, the Commissioner and ALJ relied upon a medical opinion to find an RFC that justified denial of the claim. In this case, the only medical opinion is from Dr. Wolkoff, the claimant's treating psychiatrist for 15 years. But in connection with that, I take it then you disagree that there are inconsistencies between his observations, as found in his notes, and the opinion that he reached, and that the ALJ therefore was bound by what he said at the very end, even if, I'm going to use some hyperbole here, even if everything else that he says doesn't support that conclusion? Well, Your Honor, I think what's important is that this is a fully informed opinion by Dr. Wolkoff. It's not as if the activities described in the decision were not known to Dr. Wolkoff. In fact, they come directly from his reports. So Dr. Wolkoff, the psychiatrist, despite knowledge of what the claimant was doing, felt that she was unable to succeed in a work environment. And the ALJ, I think it's undisputed that there's no other medical evidence in the record. Undisputed what? I didn't hear. That there's no other opinion evidence in the record. But the ALJ cast aside a fully informed opinion from a treating psychiatrist in favor of her own impressions about what the claimant's activities added up to. It's not her own impressions, though, as Judge Hall points out. His notes are inconsistent with that RFC report. Would you agree with that? His notes when he spoke to her, when he was treating her. For example, 11-3-11, shortly before she applies. Even notes in his notes, she wants to apply for Social Security Disability. And then says, sleep good, energy okay, mood stable, affect full range. And that's consistent through his notes for the previous two years. Why wasn't the ALJ able to say, he filled out the form, but I looked more thoroughly through her notes. And that's just inconsistent with his treatment notes, contemporaneous treatment notes. We're talking about bipolar disorder, though, and a person with bipolar, when they're not having an episode, they will function fairly well. But the ALJ, and the best example is on page 19 of the record, discussing the claimant is making candles and doing a giant puzzle, and that indicates, quote, a great ability to concentrate even under stress, end quote. So how on earth can the ability to do a puzzle and make candles equate to a great ability to function under stress? That's the kind of leap that the judge has made here without any medical opinion to back up her RFC. Well, even the RFC is inconsistent, right? The doctor says her response to treatment is good, the prognosis is good-slash-fair, stable most of the time. The chart is kind of inconclusive, the two charts. Well, Your Honor, I think that we see a lot of these RFC forms. Sometimes the doctor writes, they put a slash line down, they say they can't do anything. This is a thoughtful RFC. It has unlimited ability in some areas and poor to none in other areas. And on page 293, the doctor certified that it was based upon objective findings and not only on subjective complaints. So the doctor has made that affirmation at the end of the RFC. And everything is relative. This is an individual who has considered suicide, attempted it as a child, and tells everyone she has a plan. And the fact that she's still around, I think in relative terms, she's doing fairly well because the alternative could be much worse. The other thing, page 19, the judge says the claimant had a pool installed. That involved planning and dealing appropriately with contractors. Well, how do we know that? The ALJ simply made a bunch of leaps of logic that are not supported by the record. And it was not properly developed. If the ALJ was going to rely upon all of these findings in the notes, and I call the decision by ambush and I stand by that, she should have given the claimant the chance to explain, well, what was your involvement with the pool? Did she plan it or was she hiding in her room? And none of us know. If we take that out of the equation, it seems to me we're still left, though, with what at least I think the other side argues are inconsistencies of what the ALJ relied on between the observations of the doctor who gave the RFC opinion and his ultimate conclusion. Well, Your Honor, I think that, you know, there's case on this circuit that where a doctor says mild, moderate, marked, that's not specific enough. And simply because the doctor writes that a person is doing good or doing fair, that should not really control the day. I think when a doctor takes the time to fill out a form in detail, to give a detailed RFC and then certifies that it's based upon objective findings, I think that the ALJ cannot simply give that little weight in favor of her own opinion as to what this individual can or can't do. Well, I would agree with you if her own opinion weren't founded on or touching on various other things that she finds in the very presentation that comes along with the doctor's conclusion, that is, that doctor's notes about what he observed. Should she have done more and, you know, summoned him in and said, you know, tell me about what was going on when you wrote each of these things? I think if the ALJ had questions as to the doctor's opinion, the ALJ is under a duty to seek clarification. Ask me to do it or subpoena the doctor. And Dr. Wolkoff, in light of these activities, why do you think that this person has a poor ability to function, be able to stress, et cetera? Instead of simply making these leaps, on page 21 of the record in the decision, I think it's painfully obvious in the second paragraph, based on the fact the claimant could do cruises, baby shower, candles, et cetera, it is reasonable to conclude that she's able to constantly understand, carry out and remember simple instructions. The ALJ is fashioning her own medical opinion there. Later in there it says, it may be inferred that she can at least frequently respond to supervision. In the last sentence, a person who can handle these kinds of events would be able to constantly deal with changes in a routine work setting. The ALJ is creating a medical opinion here because there is no other opinion from a consultative examiner or even from a non-examining physician that the ALJ could rely upon. I think the treating physician rule means that the opinion of a 15-year treating psychiatrist can't be cast aside when there is nothing else in the record in terms of a medical opinion as to what this person can or can't do. Thank you. Thanks very much. You reserved two minutes for rebuttal, Mr. Miller, so thank you. Mr. Jewett. May it please the Court, my name is Peter Jewett for the Commissioner of Social Security. Your Honors, the Commissioner's decision that Monroe was not disabled is supported by substantial evidence and free of legal error. Therefore, it should be affirmed. First, I'd like to discuss Dr. Wolkoff's opinion. As you know, the ALJ mentioned several of the factors required by regulation before affording this opinion little evidentiary weight. For example, the ALJ mentioned a 15-year treatment history between Ms. Monroe and Dr. Wolkoff. The ALJ explicitly called Dr. Wolkoff a treating source. The ALJ mentioned Dr. Wolkoff's specialty in psychiatry and also mentioned the factors of supportability and consistency. Importantly, the ALJ reviewed the medical records at length, documenting how this opinion was both not well supported by clinical diagnostic techniques and was inconsistent with other substantial evidence. For instance, the ALJ noted that some of the limitations in Dr. Wolkoff's report were drawn from the appellant's own self-report. Indeed, Dr. Wolkoff put direct quotations like, quote, I don't work well with others, end quote, into the opinion. As this court has held, an ALJ can give less weight to a physician's opinion that relies on a claimant's own reports of his or her symptoms. Cases like Pauline's. Well, here you've got a psychiatrist. How else does a psychiatrist get information? He, she can't, you know, do some brain scan and figure out whether that's the truth. Surely, Your Honor, a psychiatrist has to rely on a claimant's. Self-reporting, right? Almost exclusively. However, taking such notes and inserting them directly into opinion and making the commissioner accept such limitations as binding on the commissioner would be going too far. The ALJ is empowered to consider these reports. What if he had just said, based on that, it's my conclusion based on my treatment of her, which includes some oral therapy, I suspect, and whatever other drug therapy is going on, that she cannot work well with others. Now, that comes out of the notes. That's his conclusion. Certainly, Your Honor, more narrative explanation would have backed up that opinion and made it more believable. However, the opinion doesn't. It includes direct quotations with quotation marks. You've got a busy psychiatrist reporting a bunch of information, trying to help his patient and then get on to the next one. Yes, Your Honor, and I take your point that we, of course, the psychiatrist has to rely on a claimant's observations to them. However, when this court has repeatedly held that the ALJ is empowered to take that into consideration, when a person is stating their limitations to their doctor, their doctor transcribes them, that does not turn that into opinion. It is merely a reporting of a symptom. Second, the ALJ noted that Dr. Wolkoff's treatment notes reflected sad mood or altered affect only occasionally despite huge ongoing stressors in her life, difficulties with her husband, the death of two of her pets. The ALJ also noted several instances where Dr. Wolkoff had noted good mood or a stable affect or a stable mood. As noted more fully in the commissioner's brief, there were plenty more examples that the ALJ didn't cite to where Dr. Wolkoff had noted a good mood. Further, despite claiming in the opinion, for example, that Ms. Monroe had racing thoughts all the time, there was no evidence of racing thoughts in the entire record during the relevant period. Indeed, the magistrate judge went through the record and tried to find evidence of racing thoughts and found only two mentions of racing thoughts, one before the relevant period and one well after the relevant period. Clearly, given those inconsistencies, the ALJ was entitled to give this opinion less weight. Third, the ALJ discussed that the activities of daily living identified in those treatment notes were inconsistent with Dr. Wolkoff's opinion. For example, Dr. Wolkoff stated that Ms. Monroe would have no ability to deal with the public, yet despite stating that, the treatment notes reveal that she goes on cruises, she goes on snow-machining trips, she takes international travel, she worked part-time. Have you ever been on a snow-machine trip? Yes, I have, Your Honor. Right. How much talking do you get done with anybody else who's on that snow-machine trip? Not to be too colloquial, Your Honor, but you ride all day and you come back to the cabin at the end of the day, and there you are. You have plenty of talking with your fellow travelers. At the end of the day? Yeah. Well, do we know that that's how those trips went for her? Not exactly, but the ALJ is entitled to take logical inferences from these things. Even if we assume, as Ms. Monroe stated in her brief, that when she was on these cruises, she locked herself in her cabin. She also stated that she goes to the shop every day, she takes care of her husband, she takes care of her dogs. These are clearly inconsistent with the opinion that she has no ability to deal with the public and no ability to deal with stress. Fourth, the ALJ noted inconsistency instances in when Ms. Monroe was examined by her primary care physician and she denied symptoms related to her mental health. She affirmatively denies depression and anxiety several times to her primary care physician. So ultimately, Your Honors, given the benign treatment notes from Dr. Wolkoff, the treatment notes in which she specifically denies having anxiety or depression, and the non-medical evidence, the ALJ had ample evidence to support a finding of non-disability. As to the – and as I understand the ALJ's opinion, she was relying on the presence – Correct, Your Honor. Ms. Monroe could be eligible. The RFC was for unskilled work at all exertional levels, which the ALJ's RFC finding almost word for word tracks SSR 8515 and the medical vocational rules which contemplate this type of work. Unskilled work by regulation involves dealing primarily with objects rather than data or people. So this took into consideration Ms. Monroe's limitations in dealing with other people. I just wanted to make one final point. As to the claim that the ALJ substituted her opinion for medical opinion, the Commissioner's regulations specifically call for the ALJ to consider all relevant medical and other evidence when assessing the RFC. Thus, it's incorrect to state that the ALJ cannot make the RFC finding absent medical opinion. Indeed, this Court has held on several occasions that even when the record lacks a single medical opinion, the ALJ is still empowered to make that decision in Pelham, in Berry v. Schweiker, and in Tankeese. If the Court has any other questions, I'm happy to rest on our brief. Thank you, Your Honor. Thank you, Mr. Miller. Excuse me, Mr. Jewett. Sorry, Mr. Miller, you've got two minutes for rebuttal. With regard to the last contention raised by the Commissioner, in cases where the impairment is extremely minor, then the case law is that the ALJ need not go out and find a medical opinion to state, for example, that a hangnail is not disabling. But in this case, there's an undisputed severe impairment with 15-plus years of medication therapy by a psychiatrist. This is not the case where the ALJ can simply cast aside the opinion of the treating psychiatrist and rely on nothing but her own thoughts as to what the claimant can or can't do. I would also want to point out that the RFC on page 291 of the record, again, this is not an overstated RFC. Dr. Wolkoff indicates that Monroe would be off task 30 to 50 percent of the time. He could have checked the other box. But what he's saying is that a majority of the time the claimant would be functional, but 30 to 50 percent of the time she would not. And under the regulations, an individual needs to be on task for the vast majority of the time to maintain employment. If someone's off task 30 to 50 percent of the time, they're not employable, but they still are relatively stable most of the time. So I don't necessarily think that his reports are inconsistent at all. And I believe that it supports a finding of disability. Did you ever request that Dr. Wolkoff be interviewed or come in for the hearing? I did not, Your Honor. Why not? You must have seen that the notes were inconsistent with his RFC, right? Did this come up? It didn't, Your Honor. The notes were produced, many of them, after the hearing had occurred. And ALJ asked for further notes, and we obtained them. But psychiatry notes, they often read, doing fairly well, things like that. The other point is that this individual was on seven different medications, and these medications have side effects. And Monroe testified that she was tired all the time. And that's another factor I think Dr. Wolkoff very properly considered in finding she was off task 30 to 50 percent of the time. Taking seven medications, I'd probably be off task even more than I am now. So that's another point that I think should be considered, Your Honor. We don't consider you off task, Mr. MacKinnon. Thank you. I appreciate that, Your Honor. Thank you for a vigorous argument, much appreciated by the court. Thank you both.